UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIS WYNNE, et al.,                               :

            Plaintiffs,                        :      MEMORANDUM OPINION

   -v.-                                                        :
                                                                23 Civ. 9955 (DEH) (GWG)
CITY OF NEW YORK,                                   :

            Defendant.                       :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

I.      BACKGROUND

The plaintiffs in this case, numbering 212 individuals, filed this action on November 10, 2023, raising claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., relating to their employment by the City of New York. See Complaint, filed November 10, 2023 (Docket # 1) ("Compl."). In brief, plaintiffs alleged that the defendant failed to compensate them for work performed before and/or after the plaintiffs' scheduled shifts. See Compl. ¶¶ 10-15.

The undersigned held a settlement conference with the parties on October 28, 2024. The parties reached a settlement as a result of the conference and now seek approval of their proposed settlement. See Request for Settlement Approval, filed December 6, 2024 (Docket # 75) ("Cheeks App.").

The settlement provides that the City will pay a total of $2,900,000.00 to settle all claims. This consists of (1) $1,371,000.00 in backpay and (2) $1,529,000.00 constituting liquidated damages, Service Awards, statutory attorneys' fees, and litigation expenses. Settlement Agreement, signed December 2, 2024 (Docket # 75-1) ¶ 2.1(A), (B).

II.     GOVERNING LAW

The Second Circuit has held that the settlement of FLSA claims "require[s] the approval of the district court or the [Department of Labor] to take effect."  Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015).  This requirement derives from the fact that there is "unequal bargaining power as between employer and employee."  Id. at 202 (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706-07 (1945)).  In determining whether a settlement is "fair and reasonable," courts have considered the totality of circumstances, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Protection, Inc., 948 F.3d 593, 600 (2d Cir. 2020) (quoting Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)).

III.    DISCUSSION

   A.   Amount Paid to Plaintiffs and Non-Monetary Terms

We next address the Fisher factors.

As to the "range of possible recovery," we view this factor as invoking a comparison of the amount the plaintiffs had a realistic chance of obtaining in relation to what the plaintiffs actually obtained through the settlement.  See Puerto v. Happy Life Home Health Agency Inc., 704 F. Supp. 3d 403, 405 (S.D.N.Y. 2023).  Here, plaintiffs alleged damages based on a number of disputed contentions, including that they worked through the entirety of their five paid meal periods 5 days a week and that plaintiffs worked 25 minutes per day before and after every shift.  Cheeks App. at 5.  The amount of the settlement is 47% of their "best case scenario" damages as calculated by plaintiffs' expert witness.  Id.

2

Given the uncertainty as to plaintiffs' ability to prove their claim, this is a fair settlement. We note that cases arising under Cheeks have approved a vast range of percentages of potential recoveries, including percentages as low as 12.5%.  See Zorn-Hill v. A2B Taxi LLC, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (12.5% of "best-case scenario"); see also Redwood v. Cassway Contracting Corp., 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (29% of total alleged damages); Gervacio v. ARJ Laundry Servs. Inc., 2019 WL 330631, at *1 (S.D.N.Y. Jan 25, 2019) (20% of total possible recovery).  The settlement here exceeds these percentages.

Of course, to evaluate this factor, we must also evaluate whether there were good reasons to settle for a recovery that is less — even far less — than plaintiffs hoped to obtain at trial.  For this purpose, we must consider the third factor — that is, the seriousness of the risks to obtaining a full recovery.  Here, the factual claims by plaintiffs as to the number of minutes and the regularity with which they worked before and after their shifts as well as during ostensible lunch breaks were disputed by defendants.  See Answer, filed January 16, 2024 (Docket # 26).  It was by no means certain that plaintiffs would be able to prove their factual contentions.  The Court thus finds that there was good reason to significantly discount the potential full value of the claims in an effort to achieve a settlement.

As to the second factor, the parties persuasively argue that they would need to expend significant resources in the fact discovery, expert discovery, and trial processes. Cheeks App. at 7.

Factors four and five also support the conclusion that the proposed settlement amount is reasonable.  Plaintiffs were represented by counsel, the parties participated in a court-ordered settlement conference with the undersigned, and there are no indicia of fraud or collusion. Counsel was engaged to represent plaintiffs on a one-third contingency fee basis, see Cheeks

App. at 3, which in and of itself provided counsel with a strong incentive to settle the case for the maximum recovery possible, see Almanzar v. Silver Star Properties Corp., 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023).

Further, the plaintiffs were informed of the terms of the settlement, including their individual settlement payments, the amount of the service awards, and the amount allocated to attorneys' fees and expenses. Declaration of Molly A. Elkin, dated December 5, 2024 (Docket # 75-3) ("Elkin Decl.") ¶ 5-6. There have been no objections to the settlement. Id. ¶ 6.

As a result, we find the amount of the settlement to be reasonable. We have examined the non-monetary terms of the settlement agreement and find none that cast any significant burden on plaintiffs.

B. Service Awards

The settlement provides that three plaintiffs will be paid $3000 each as a service award. Settlement Agreement at 3. One of the recipients is the named plaintiff and all three recipients assisted in settlement discussions, approving the settlement, and recommending the settlement to the collective. Elkin Decl. ¶ 10-11; Cheeks App. at 8. Case law approves the granting of service awards in FLSA settlements. See, e.g., Diaz v. Scores Holding Co., 2011 WL 6399468, at *3 (S.D.N.Y. July 11, 2011) ("In FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.") (citation omitted). These service awards amount to only 0.3% of the total settlement amount and we find them to be reasonable.

C. Attorneys' Fees and Costs

The fairness review required by Cheeks "extends to the reasonableness of attorneys' fees

4

and costs." Fisher, 948 F.3d at 606 (citing Cheeks, 796 F.3d at 206); accord Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016) ("In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."). The terms of the settlement provide for plaintiffs' counsel to be reimbursed for $17,630.00 in expenses, which includes expert witness fees, and to be paid $960,790.00 in attorneys' fees, which represents one-third of the amount recovered exclusive of costs. See Settlement Agreement ¶¶ 2.4, 9.1.

Each of the 212 plaintiffs "signed an individual contingency fee agreement in this case, in which the Plaintiffs agreed to a 33 and 1/3 % contingency fee." Elkin Decl." ¶ 12. As we have previously written in Puerto, 704 F. Supp. 3d at 406, we will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many other courts do. See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5, 2022) (confirming the "reasonableness of the fees by performing a 'lodestar cross check'") (citations omitted). We decline to perform a "lodestar cross check" because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out (as is true here) that the "lodestar" for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A "lodestar cross check" is of course appropriate, and indeed routinely performed, where a court is being asked to award a percentage of a common fund in attorney's fees in a class action lawsuit. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (multiplier of "near 2" sufficient to compensate attorneys for risk in New York Labor Law class action). In such a scenario, the class has never entered into any binding agreement with the attorney regarding disposition to the attorney of any funds obtained.

Here, by contrast, each of the plaintiffs and their attorneys agreed in advance of the settlement that the attorneys would be entitled to one-third of any recovery as attorneys' fees no matter the outcome of the lawsuit. The purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. See Almanzar, 699 F. Supp. 3d at 256. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time they expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client."). Therefore, in those cases in which FLSA attorneys receive a contingency fee that results in a higher hourly rate than would otherwise be an adequate compensation, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. Puerto, 704 F. Supp. 3d at 406. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). If courts were to find such contingency fee arrangements not "reasonable" under Cheeks whenever the fees paid to counsel exceed the multiplier that would be considered reasonable in a class action, such a finding would diminish the pool of attorneys willing to accept the risk of taking on FLSA cases. See Almanzar, 699 F. Supp. 3d at 256. This would run counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected. Puerto, 704 F. Supp. 3d at 407.

Instead, we must judge whether the contingency arrangement itself is "reasonable." Id. We believe such an analysis, however, must be conducted ex ante — not in light of the actual number of hours expended after the contingency fee arrangement was made. Id. Certainly, we

6

would not find "reasonable" any contingency fee arrangement that was itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339 (N.Y. 2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.") (citation omitted). Also, it is possible that a contingency fee arrangement in a particular case might be ex ante unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Puerto, 704 F. Supp. 3d at 407. Here, however, there is no indication of any such overreaching or of any deceptive conduct.

As to the amount of the contingent payment, we would not approve a percentage amount that was above the range of what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or questionable. Id. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. Id. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." Garcia v. Atlantico Bakery Corp., 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) (collecting cases).

Thus, putting aside the number of hours actually spent by counsel on this case, the Court finds that the contingent fee arrangement was fair to plaintiffs and reasonable at the time it was made. Accordingly, the Court approves the attorneys' fees in the settlement agreement because they are consistent with the retainer agreement agreed to by plaintiffs.

Finally, as to the costs, an attorney can recover "those reasonable out-of-pocket expenses incurred . . . and ordinarily charged to their clients." Leblanc-Sternberg v. Fletcher, 143 F.3d

748, 763 (2d Cir. 1998) (internal citation and quotation marks omitted).  Here, plaintiffs' attorneys seek $17,630.00 in litigation expenses, including copying, court costs, mailing costs and "Consultant Services," which refers to the fees of an expert who performed data analysis.  Cheeks App. at 3; Elkin Decl. ¶ 37 & Ex. C thereto; Declaration of Hope A. Pordy, dated December 6, 2024 (Docket # 75-4) ("Pordy Decl.") ¶ 21 & Ex. B thereto.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."  Viafara v. Mciz Corp., 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014).  We thus find it reasonable that these costs be reimbursed.

IV.   CONCLUSION

For the reasons stated above, the application to approve the settlement (Docket # 75) is granted.  This action is dismissed with prejudice and without costs except as may be stated in the settlement agreement.  The Court will retain jurisdiction to enforce the settlement agreement.  Any pending motions are moot.  The Clerk is requested to close this case.

SO ORDERED.

Dated: December 10, 2024
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge